# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **Jimmy John's Overtime Litigation,** | ) | |
| | ) | **Case Nos: 14 C 5509, 15 C 1681,** |
| | ) | **15 C 6010** |
| | ) | |
| | ) | **District Judge Kocoras** |
| | ) | |
| | ) | **Magistrate Judge Schenkier** |

## ORDER

As a result of their dispute over certain topics in a Rule 30(b)(6) notice served by plaintiffs on Jimmy John's, the parties have filed competing motions: (1) Jimmy John's has moved for a protective order barring plaintiffs from pursuing at this time Topics 2, 6 and 18 (doc. # 348), and (2) plaintiffs have filed a motion to compel Jimmy John's to produce a witness to testify on Topics 2 and 18, as well as to identify who those witnesses will be, when the deposition will take place, and the length of time that for the deposition (doc. # 350). For the reasons set forth below, the motions are granted in part and denied in part.

### I.

Topic No. 2 asks that Jimmy John's present a Rule 30(b)(6) witness to testify about a broad array of matters pertaining to nine sources of electronically stored information ("ESI"). Jimmy John's has agreed to produce a witness to testify about certain of the sources, but the competing motions reflect a dispute that centers on whether the witness should be required to testify about the (a) email system, (b) user-created files, and (c) the Kronos payroll system.

During the meet and confer conference, plaintiffs asserted that they should be able to inquire about the email system and user-created files because they "bear on Jimmy John's communication with franchisees and its potential supervision and control over franchisees" (JJ Mot., Ex. 2: Meet and Confer Tr. at 7). We disagree. We expect that it is the substance of email communications (along with other evidence) that will be relevant to the issue of control. But, the fact that franchisees and Jimmy John's may communicate through email does not provide a sufficient basis for Jimmy John's to be required to produce a Rule 30(b)(6) witness to testify

about the details of how that system functions.

As for the Kronos payroll system, it was from the meet and confer discussion (1) whether franchisees use that system; (2) if so, which ones currently use it or in the past have done so; and (3) the terms and conditions of any use by franchisees. We can envision possible relevance of this topic to the joint-employer question if the inquiry is limited to the foregoing (or closely related subjects). Thus, the Jimmy John's Rule 30(b)(6) witness shall be prepared to address those matters. But, again, we see no basis for broad inquiry into the details of the functioning and structure of that payroll system.

## II.

Topic No. 6 asks for a witness to testify about the content, development, and creation of Jimmy John's New Hire packet. Jimmy John's has agreed to produce a witness to testify about the packet "to the extent such a packet was shared in written form or otherwise" with Jimmy John's franchisees (JJ Mot., Ex. 2: Meet and Confer Tr. at 15-16). Jimmy John's objected to producing a witness to testify about New Hire packets that were not in any way shared with franchisees.

We are unsure whether plaintiffs have elected to pursue the matter any further: while Jimmy John's has included the topic in its motion for protective order, the plaintiffs have not included this topic in their motion to compel. We suggest that to avoid confusion (and duplication) in the event of future motions, the parties agree on what issues will be presented to the Court and that only one motion be filed. Dueling, and largely mirror image, motions serve no useful purpose.

That said, since Jimmy John's has raised the issue in its motion, we provide a ruling: Jimmy John's need not prepare its witness to testify about New Hire packets that were not shared with the franchisees. During the meet and confer, plaintiffs argued that the Court's ruling that intra-corporate communications must be produced supports their view that the Rule 30(b)(6) witness should be prepared to testify about New Hire packets that were never shared with franchisees. We disagree. As we explained, intra-corporate communications may refer to discussions with franchisees and could shed light on the control issue. However, we consider that possibility to be more remote with respect to a New Hire packet that was not shared with franchisees: indeed, too remote to require Jimmy John's to prepare a Rule 30(b)(6) witness on that topic. We therefore grant the motion for a protective order on that aspect of Topic 6; Jimmy John's, of course, will still be required to produce a witness to testify about the packets that were shared with

franchisees in writing or "otherwise."

## III.

Topic 18 asks for a witness to testify about any requirements that Jimmy John's imposes on persons who purchase franchise stores that previously were operated as corporate-owned stores. Plaintiffs contend that if Jimmy John's has created requirements that it would impose (or perhaps imposed prior to the relevant period) on those who purchase corporate-owned stores, that would shed light on the joint employer question. For its part, Jimmy John's argues that this inquiry would not be relevant since Jimmy John's has not sold any corporate-owned stores to franchisees during the relevant period.

But, the fact that Jimmy John's has not sold any corporate-owned stores to franchisees during the relevant period is a different question than whether it sold such stores prior to the relevant period. We do not know the answer to that question. Thus, we cannot exclude the possibility that ASMs worked at franchisee locations during the relevant period that had been corporate-owned stores prior to the relevant period. If Jimmy John's in fact has imposed certain requirements on franchisees that purchase stores which were previously corporate owned, those requirements could shed light – depending on the requirements – on the joint employer question for *those* franchisees. However, we fail to see how Rule 30(b)(6) testimony about requirements on those who purchase corporate-owned stores would advance the ball on the question of whether Jimmy John's is a joint employer with *other* franchisees, which operate stores that were not previously corporate owned.

Therefore, by 08/12/16, Jimmy John's shall inform plaintiffs in writing whether it sold any corporate-owned stores to franchisees at any time during or prior to the relevant period, and if so, the date of the last such sale. At the 08/17/16 status hearing, we will determine whether Jimmy John's must present a witness to testify on the requirements imposed on such franchisees. We note that this subject is sufficiently discrete that the decision on whether Jimmy John's witness(es) must be prepared to testify about it will not affect the timing of the deposition, which we address next.

## IV.

Plaintiffs seek to compel Jimmy John's to "immediately" identify the Rule 30(b)(6) witnesses and the topics they will cover, and to begin the Rule 30(b)(6) deposition by 09/19/16. Plaintiffs also ask that the Court set the number of hours

to be allotted for the deposition.

We begin with the identity of the witness(es). During the meet and confer, Jimmy John's said it would designate its CEO as the Rule 30(b)(6) witness, and at most it would designate one additional witness (JJ Mot., Ex. 2: Meet and Confer Tr. at 42). If Jimmy John's in fact intends to designate any person(s) in addition to or in lieu of the CEO, Jimmy John's shall do so in writing by 08/29/16 and shall identify the topics each witness will cover.

With respect to the start date, during the meet and confer session plaintiffs asked for the deposition to commence by 09/07/16. Plaintiffs asserted that date was some six weeks after the meet and confer, and thus afforded Jimmy John's adequate preparation time. Jimmy John's argued that date did not leave enough time to prepare its CEO, who has "a very tight schedule and he has to be prepared on all of these topics," which Jimmy John's described as "voluminous" (JJ Mot., Ex. 2: Meet and Confer Tr. at 42). We agree that the number of topics for deposition (close to 20) is extensive, and we expect that the CEO is a busy person whose time is at a premium.

That makes it curious that Jimmy John's is designating its CEO as perhaps the sole witness to cover a large number of Rule 30(b)(6) topics, many of which we would expect him to lack detailed knowledge about. That is not a bar to him serving as a Rule 30(b)(6) witness. The rule does not require an organization to offer its most knowledgeable person as its Rule 30(b)(6) designee. Rather, an organization must designate a person who is able to testify to the knowledge of that organization; it is up to the organization to decide who that person will be. Here, if Jimmy John's takes the steps necessary to prepare the CEO to testify to Jimmy John's knowledge about the Rule 30(b)(6) topics, then it has discharged its obligations.

But we are not willing to say that Jimmy John's may select a person who requires extensive preparation and then argue that the person's busy schedule means the deposition cannot commence for an extended period of time. A Rule 30(b)(6) deposition often leads to follow-on discovery, which could create unnecessary difficulties if the Rule 30(b)(6) deposition is deferred to a date that is close to the deadline for completing discovery. If Jimmy John's wants to have its CEO serve as the Rule 30(b)(6) witness, then the CEO must be willing to carve out of his schedule the time to prepare so that he is ready for the deposition at a time that makes sense given the 12/02/16 deadline for completing joint-employer discovery. We conclude that requiring the deposition to commence by 09/19/16 –

4

a date nearly seven weeks away – should give Jimmy John's ample time to prepare the CEO and any other witness(es) Jimmy John's may choose to designate.

Ww turn to plaintiffs' request that we establish the length of time for the deposition. Jimmy John's proposes a seven hour limit (JJ Mot., Ex. 2: Meet and Confer Tr. at 53). Plaintiffs, who ask the Court to determine the length of the deposition, offer no counter-proposal. Without knowing plaintiffs' position, we decline to set the length of the deposition at this time. We direct the parties to discuss the length of the deposition in light of the number and scope of the topics that will be covered and attempt to reach agreement. If the parties have not reached agreement by the time of the 08/17/16 status hearing, the Court will set a time limit at that hearing.

Finally, we register out disagreement with Jimmy John's assertion during the meet and confer that the length of the deposition will affect the amount of witness preparation that must be done (JJ Mot., Ex. 2: Meet and Confer Tr. at 51). The witness(es) whom Jimmy John's offers must be prepared to reasonably – and meaningfully -- cover the topics that have been designated. The length of time it will take to perform that task will depend on a number of factors, including the level of knowledge that the witness(es) have about the topic before the preparation begins. The amount of time it takes to properly prepare the witness should not expand or contract depending on the length of the deposition.

ENTER:

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

DATED: **August 3, 2016**

5